IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Bradley L. Powell, Sr.,                                  Case No: 2:20-cv-1977

        Plaintiff,                                     Judge Graham

    v.                                                 Magistrate Judge Deavers

Fluor-B&W Portsmouth LLC,

        Defendant.

Opinion and Order

Plaintiff Bradley L. Powell, Sr. brings this employment discrimination suit relating to the termination of his employment with defendant Fluor-B&W Portsmouth LLC (hereinafter "FBP"). Powell alleges that FBP terminated him because of his African American race and in retaliation for him filing a charge of discrimination with the United States Equal Employment Opportunity Commission.

FBP has moved for summary judgment as to all claims. It argues that the evidence conclusively shows that FBP terminated Powell because of his repeated disruptive and harassing behavior towards coworkers, especially females. The "final straw" was a joke Powell made to two coworkers. The so-called joke involved rape and babies, and Powell admits that he told it.

For the reasons stated below, defendant FBP's motion for summary judgment is granted.

I.      **Background**

      A.      **FBP and Its Workplace Policies**

FBP has been contracted by the United States Department of Energy to perform decontamination and decommissioning of a former uranium enrichment plant in in Piketon, Ohio. Powell worked at the Piketon facility from 2009 until his termination in 2018. He was a Project Worker who performed various tasks at the facility. Workers there were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, Local Union No. 689 and subject to a collective bargaining agreement.

FBP has several policies prohibiting workplace harassment and intimidation.  Its Harassment and Employee Privacy Policy, as set forth in the Company's Code of Business Conduct and Ethics, provides:

> Harassment has no place at FBP and will not be tolerated.  Harassment can take many forms, including verbal remarks, physical advances, or visual displays.  It may come from co-workers, supervisors, suppliers, contractors, or customers. Harassment has the purpose or effect of creating an intimidating, offensive, or demeaning environment.  Harassment may be sexual or non-sexual in nature.  Sexual harassment may include unwanted advances, inappropriate sexual jokes, sexually suggestive comments, touching, requests for sexual favors, and inappropriate comments about appearance.  Other examples of harassment may include offensive comments, jokes, or pictures related to race, religion, ethnicity, gender or age.

Doc. 52-2 at PAGEID 1571.

FBP has an additional Anti-Harassment Policy that prohibits various forms of harassment, including "epithets, slurs, derogatory comments or jokes, intimidation, negative stereotyping, threats," "[v]erbal abuse or jokes of a sexual nature, sexual innuendo," "commentaries about an individual's body, sexually degrading words," and "suggestive or obscene" statements.  *Id.* at PAGEID 1611.  The company's Anti-Violence Policy prohibits "[v]iolence, threats, of violence, harassment, threatening remarks or gestures," and "behavior (including teasing and joking) that a reasonable person would find threatening, hostile, or offensive."  *Id.* at PAGEID 1589–90.

The Employee Discipline Policy provides for progressive disciplinary action.  Certain offenses are classified as "extremely serious," which can result in immediate termination.  *See id.* at PAGEID 1594, 1602.  Threatening and intimidating behavior, as well as sexual or racial harassment "of any kind" are classified as extremely serious misconduct.  *Id.* at PAGEID 1602.  *See also id.* at PAGEID 1589, 1608 (Anti-Harassment and Anti-Violence Policies, each providing that a violation will result in disciplinary action "up to and including immediate termination").

### B.    Powell's Disciplinary Violations

#### 1.    Early Infractions

Defendant has shown, and plaintiff has not disputed, that Powell had a number of disciplinary infractions from 2013 to 2016.  These included time sheet and attendance issues, excessive tardiness, and staring at and intimidating a female coworker.  *See* Docs. 52-2 at PAGEID 1615–22, 1625–27, 1642–44.  He received various forms of discipline, including counseling, written reprimands, and investigatory suspension.  *Id.*

### 2.    October-November 2017

The disciplinary problems with Powell increased in October 2017 after two female coworkers, Brandy Haynes and Cecilia Southard, complained that Powell was engaging in intimidation, harassment, and race-based stereotyping at work and through social media.  FBP conducted an investigation.  Haynes reported that Powell had followed her around at work, hovered over her, and threatened that she should not "mess with" him.  She also said that he referred to female coworkers and women in general as "baby," "bitches" and "hoes," and that he had given her costume jewelry and told her to send him a picture of her wearing the jewelry with nothing else on.  Haynes reported that Powell said white people did not like spicy food and that he had called his coworkers racists on Facebook.  Southard reported that Powell had stood over her and invaded her personal space, called her "baby" and asked female coworkers to call him "big daddy," liked to turn everything "into a racial discussion," told her that Haynes was a "racist bitch," and, while she was pregnant, told her "good luck having a black baby in a white world" (Southard is white and the child's father is African American).  *See* Doc. 52-3 at PAGEID 1784–1816.

Powell was interviewed during the investigation, and he denied the accusations.  *See id.* at PAGEID 1814.  However, the investigator found that the claims of Haynes and Southard were corroborated by other employees and by other evidence, including Powell's Facebook posts and race-based comments which Powell made to the investigator.  *See id.*

FBP issued a written reprimand to Powell on November 20, 2017.  *See id.* at PAGEID 1817–18.  The reprimand stated that as a result of FBP's investigation, "the Company has concluded that you have persisted in a pattern of behavior that has created a hostile work environment and has served to create ongoing disruption in the work place.  This behavior includes, negative stereotyping, and gender based harassment."  *Id.* at PAGEID 1817.  The reprimand put Powell on notice "that you are in EXTREME Job Jeopardy.  Any further misconduct may result in your immediate disciplinary discharge."  *Id.*

### 3.    April 12, 2018

FBP received a complaint from Haynes on April 12, 2018 that Powell was disturbing her and other employees.  *See* Doc. 52-3 at PAGEID 1819.  She reported that Powell had been telling employees that they would "have to testify for him as a character witness" in a lawsuit the EEOC was bringing against FBP.[1]  *Id.*

---

[1]  As will be explained below, Powell had filed a charge of discrimination with the EEOC in February 2018, but the EEOC was not bringing a lawsuit.

Company and union representatives met with Powell.  He initially denied having made any statements to coworkers.  When informed that there would be a fuller investigation of the matter, Powell conceded that he had spoken to coworkers about testifying on his behalf.  *See id.*  The union representative suggested that perhaps there had been a misunderstanding on the part of employees thinking that Powell was harassing them in order to gain their support for a complaint or action against the company.  *See id.*

On April 17 representatives interviewed Haynes, who said that Powell had approached employees about serving as character witnesses on his behalf in an EEOC matter.  *See* Doc. 52-3 at PAGEID 1822.  She added that Powell "is relentless at harassing people" and that he had been "loud" towards her and yelled at her on two or three occasions.  *Id.* at PAGEID 1821–22.  On the same day, representatives interviewed another female employee who stated that Powell had approached her during the work day about testifying on his behalf.  She said that Powell made her feel "uncomfortable" and was calling female employees "sweetie, honey, baby."  *Id.*

FBP's Director of Labor Relations, Ronald Lee, told Powell that the company would update and reissue the November 20, 2017 written reprimand to reflect Powell's latest conduct.  *Id.* at PAGEID 1820.  On April 18 FBP issued a written reprimand to Powell on the grounds that he, by his admission, had "continued to cause a disturbance in the workforce."  Doc. 52-3 at PAGEID 1824.  The reprimand warned that further misconduct "will not be tolerated" and that Powell's employment was in extreme jeopardy.  *Id.*

### 4. April 30, 2018

On April 30 Powell was in the presence of two coworkers who were on a work break: Kelley Ramsey, a female, and Michael Brindle, a male.  Powell made what he held out to be a joke about Ramsey and a male coworker, Kyle McGlaughlin, who was not present:

> Say you have a baby Kelley and a Baby Kyle, both are in a crib settling down for a nap.  Well baby Kelley is cranky and all of a sudden starts yelling Rape Rape Rape Rape.  Baby Kyle looks at baby Kelley and says you['re] fine it's just a pacifier in your Butt.

Doc. 52-3 at PAGEID 1830.

Ramsey and Brindle left the area, and Brindle told her that the joke was not funny and that they needed to report it to Human Resources.  *Id.* at PAGEID 1830–31.  Ramsey then immediately reported Powell's joke to HR, which took her written statement.  *Id.* at PAGEID 1830.

4

Ramsey and Brindle were interviewed on the next day, May 1. *See id.* at PAGEID 1829–32. During the interview, Ramsey was sufficiently disturbed by the joke that she did not want to say it out loud and needed to have the investigator read back her written statement. *See id.* at PAGEID 1829. Brindle stated that he was "appalled" by the joke and found it to be "very offensive." *Id.* at PAGEID 1831–32.

McGlaughlin was also interviewed on May 1. He said that Brindle had advised him of the offensive joke. *See id.* at PAGEID 1827. McGlaughlin further stated that he had heard Powell making lewd comments about Ramsey being "red hot" and wanting to see her "crawling into her bed." *Id.* at PAGEID 1826–27.

Company and union representatives met with Powell on May 2. Lee notified Powell that he was being placed on an investigatory suspension with pay. *See id.* at PAGEID 1834.

Ramsey and Brindle were separately interviewed again on May 8. They both confirmed the way in which Powell had worded the joke. *See id.* at PAGEID 1836, 1838. They also confirmed McGlaughlin's report that Powell had made comments about Ramsey being "red hot" and "crawling into bed." *See id.* at PAGEID 1837, 1838.

Company and union representatives interviewed Powell on the same day. Powell said that he had told a "joke" to Ramsey and Brindle which involved Ramsey and McGlaughlin. *See id.* at PAGEID 1840. He said that the joke was not offensive or inappropriate and that he did not see anything wrong with it. *See id.* Powell admitted to telling the joke as Ramsey and Brindle had reported it, but he disputed the wording of the last part of the joke. He said that in response to Baby Kelley screaming "Rape," Baby Kyle said, "It's okay, you just rolled over on your pacifier." *Id.*

FBP terminated Powell on May 14, 2018 for violating the company's Harassment and Employee Privacy Policy, Anti-Harassment Policy, and Anti-Violence Policy. In the discharge letter, Lee recounted that the company had twice issued a written reprimand to Powell for harassing behavior towards coworkers. *See id.* at PAGEID 1848. Both reprimands had cautioned Powell that his job was in extreme jeopardy. *See id.* Lee stated that the investigation of the joke incident "revealed you have continued your harassing conduct and policy violations by your indecent and obscene conduct. . . . [Y]ou have proven that you have no intention of heeding these warnings about loss of employment and certainly proven no intention to abide by the Company [policies]." *Id.*

C.    **Procedural Background**

Powell filed an EEOC charge of race-based discrimination and retaliation on February 15, 2018, three months prior to his termination. *See* Doc. 1-1. He alleged that after reporting to his

employer that Haynes had harassed him in November 2017, coworkers subjected him to "racial incidents." *Id.* He described the racial incidents as being asked for his opinions about race riots and protests. The EEOC issued a right to sue letter on May 6, 2019. *See* Doc. 1-2.

Powell filed this action on August 2, 2019. The complaint asserts claims for race discrimination under § 1981, Title VII, and Ohio law. *See* 42 U.S.C. § 1981(a); 42 U.S.C. § 2000e-2(a); O.R.C. § 4112.02(A). The complaint alleges that Powell's employment was terminated because of his race.

The complaint also asserts Title VII and Ohio law retaliation claims. *See* 42 U.S.C. § 2000e-3(a); O.R.C. § 4112.02(I). The complaint alleges that FBP terminated Powell in retaliation for him filing the February 15, 2018 EEOC.

At the request of the parties, this action was stayed while a union grievance over Powell's termination went to arbitration. On August 20, 2021, the arbitrator issued a decision finding that FBP had just cause under the CBA to terminate Powell's employment. *See* Doc. 52-1. Once the stay of this action was lifted, the parties conducted discovery and unsuccessfully attempted to mediate.

FBP now moves for summary judgment, making two primary arguments: (1) plaintiff failed to exhaust his administrative remedies relating to his Title VII discrimination claim, and (2) plaintiff's discrimination and retaliation claims fail as a matter of law because FBP has established that it terminated him for legitimate, non-discriminatory and non-retaliatory reasons.

## II.      Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in

original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

## III.     Discussion

### A.     Failure to Exhaust the Title VII Discrimination Claim

To bring suit in federal court for discrimination under Title VII, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC and receiving a right-to-sue letter. *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018). An EEOC charge must give notice of what practices or actions are being complained of, and any ensuing claim in federal court is limited to what could be reasonably expected to grow out of the factual allegations in the EEOC charge. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010).

FBP correctly observes that plaintiff's Title VII discrimination claim in no way relates to the factual allegations in his EEOC charge. His discrimination claim concerns his termination, which occurred three months after he filed the EEOC charge complaining of his coworkers asking him about racial protests.

In response to the motion for summary judgment, plaintiff conceded that he did not exhaust his administrative remedies with respect to his Title VII discrimination claim. *See* Doc. 55 at PAGEID 1960. Thus, the Court finds that FBP is entitled to summary judgment on this claim.[2]

**B.     Abandonment of Discrimination Claims under § 1981 and Ohio Law**

FBP seeks summary judgment on the merits of plaintiff's § 1981 and state law discrimination claims. In his response brief, plaintiff chose to address only the retaliation claims and wholly failed to respond to FBP's arguments concerning the § 1981 and state law discrimination claims. *See* Doc. 55 at PAGEID 1951.

The Court thus finds that plaintiff has abandoned his § 1981 and state law discrimination claims. *See Brown v. VHS of Michigan, Inc.*, 545 Fed. App'x 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (citing cases).

**C.     Retaliation Claims**

**1.     *Prima Facie* Case**

Plaintiff alleges that he was terminated in retaliation for filing the February 15, 2018 EEOC charge. He has not offered any direct evidence of discrimination. Therefore, his retaliation claims are examined under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981).

A plaintiff must first establish a *prima facie* case of retaliation by demonstrating that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (internal quotation marks omitted).

FBP does not dispute that Powell has demonstrated a *prima facie* case. He engaged in protected activity by filing the EEOC charge. FBP became aware of the charge around April 17 after it investigated Haynes's complaint that Powell was harassing coworkers to support an EEOC lawsuit. *See* Doc. 52-3 at PAGEID 1822 (showing that FBP came to the understanding that the purported EEOC lawsuit was really an EEOC charge Powell had filed). FBP terminated Powell less

---

[2]   Plaintiff's retaliation claim is exempt from the exhaustion requirement because the claim arises from the filing of "the EEOC charge itself." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 831 (6th Cir. 1999).

than a month later – a temporal proximity sufficiently close to support an inference of a causal connection. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

### 2. Legitimate Reasons for Termination

If plaintiff satisfies his *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). If the employer meets its burden, plaintiff must demonstrate that the legitimate reason offered by the employer "was a pretext designed to mask retaliation." *Id.*

The Court finds that FBP has articulated legitimate, non-retaliatory reasons for terminating Powell's employment. The record demonstrates that Powell repeatedly engaged in harassing and offensive conduct towards his coworkers, especially females. The conduct included: (1) calling female coworkers demeaning names; (2) making a lewd suggestion to Haynes and lewd comments about her; (3) intimidating Haynes and Southard by invading their personal space; (4) making race-based comments towards and about coworkers; (5) disturbing employees on company time about being required to testify against FBP in an EEOC matter; and (6) telling a rape "joke" involving coworkers. *See* Doc. 52-3 at PAGEID 1784–1816, 1819–1823, 1826–1841. The above conduct violated FBP's workplace policies and warranted discipline up to and including immediate termination. *See* Doc. 52-2 at PAGEID 1571, 1589–90, 1594, 1602, 1608, 1611.

### 3. Pretext

The burden now shifts to plaintiff to point to evidence that FBP's reasons are pretextual and that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). A plaintiff can demonstrate pretext by showing that the employer's proffered reason: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

#### a. Disturbing Employees About an EEOC Matter

Plaintiff makes two arguments regarding pretext. First, with respect to him disturbing coworkers about an EEOC matter, plaintiff argues that a document in FBP's file shows that the employer's focus was on the fact that Powell had filed an EEOC charge. Plaintiff argues that his protected activity actually motivated FBP to terminate him.

To establish pretext under the actual motivation method, a plaintiff must attack the employer's explanation "by showing circumstances which tend to prove an illegal motivation was more likely than that offered by the defendant." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir.

2000).   For the reasons discussed below, the Court finds that the evidence does not support plaintiff's argument regarding pretext.

The document at issue is a "Summary & Timeline," dated May 9, 2018, which FBP's labor relations investigator prepared for the Disciplinary Review Board.  *See* Doc. 52-3 at PAGEID 1844. It contains a chronological listing and brief description of every item in Powell's disciplinary record. The description of the disturbance over the EEOC matter is described in the following entry:

> **4/17/2018** – Investigation – Powell discussing/harassing female employees on company time concerning his EEOC charge. Powell brought a copy of the EEOC charge with him to the break room. Female employee claimed Bradley is obnoxious and is not always politically correct. She added he can make you feel uncomfortable at times because he calls people, such as females, babe, sweetie and honey and demonstrates inappropriate behavior.

*Id.* at PAGEID 1846.

The Court notes that there was some initial confusion over the nature of the EEOC matter. According to the initial employee complaint on April 12, Powell was telling coworkers that the EEOC was filing a lawsuit against FBP.[3]  *See id.* at PAGEID 1819 (Powell "telling employees that the EEOC is suing FBP and that the employee(s) will have to testify for him as a character witness"); *see also id.* at PAGEID 1820 (same).  But FBP understood by April 17 that Powell had filed an EEOC charge and that there was no lawsuit.  *See id.* at PAGEID 1822 (FBP's interview notes referring to Powell's "EEOC charge").

Plaintiff asserts, without explanation or supporting evidence, that the May 9 entry in the Summary & Timeline proves that FBP was actually motivated by the fact that Powell had filed an EEOC charge.  The Court disagrees.  The entry at most confirms that FBP was aware Powell had filed a charge.  It is clear from the entry and from the other evidence – including emails, interview notes and the April 18 reprimand – that FBP's focus was on the disruptive manner in which Powell had interacted with coworkers.   As the entry states, Powell was "discussing/harassing female employees on company time" and was being "obnoxious."   *See id.* at PAGEID 1846.   Other documents show FBP was informed that Powell was spreading "false information" and "causing a disturbance" over an EEOC lawsuit, that he was telling coworkers that "they would have to testify

---

[3]   To further muddy the waters, one or more employees thought Powell was saying that someone had filed an EEOC charge against him. *See id.* at PAGEID 1821.

on his behalf as witnesses," and that he was "relentless at harassing" them.[4] *Id.* at PAGEID 1819–22. The reason for discipline cited in the April 18 reprimand was that Powell had "continued to cause a disturbance in the workforce." *See id.* at PAGEID 1824.

While the filing of the EEOC charge itself was protected activity, Powell's disruptive and harassing behavior is not entitled to protection simply because he was talking to coworkers about the EEOC matter. *See Jones v. St. Jude Med. S.C., Inc.*, 504 Fed. App'x 473, 480 (6th Cir. 2012) ("An employee may claim protection for activities opposed to alleged discrimination so long as the manner of the employee's opposition is reasonable."). As one circuit court held, "[I]t is well established that the protection afforded by [42 U.S.C. § 2000e-3(a)] is not absolute. This court has repeatedly recognized that some otherwise protected conduct may be so disruptive or inappropriate as to fall outside the statute's protection." *Rollins v. State of Fla. Dep't of L. Enf't*, 868 F.2d 397, 400–01 (11th Cir. 1989) (citing cases). *See also Armstrong v. Index J. Co.*, 647 F.2d 441, 448 (4th Cir. 1981) (holding that § 2000e-3(a) "was not intended to immunize insubordinate, disruptive, or nonproductive behavior at work. . . . An employer must retain the power to discipline and discharge disobedient employees").

The Court thus finds that plaintiff has not satisfied his burden of showing "circumstances which tend to prove an illegal motivation was more likely than that offered by the defendant." *Leggett Wire*, 220 F.3d at 759.

### b. The Rape Joke

Plaintiff's other argument regarding pretext is that the wording of his joke was different from what FBP concluded it was. According to Powell, the joke did not end with Baby Kyle telling Baby Kelley that there was a pacifier in her butt. It ended instead with Baby Kyle telling Baby Kelley to "calm down, you're laying on your pacifier." Powell Dep. at 292. According to Powell, "I never would have put sodomy in a joke." *Id.* at 290. Plaintiff's position is that the true wording of the joke would not have warranted termination. In other words, his joke was not really that serious because it involved only rape, and not sodomy as well.

---

[4] At the time the reprimand was issued, Powell noted his disagreement by writing on the reprimand notice that there was "no evidence presented." *See* Doc. 52-3 at PAGEID 1825. However, in response to the motion for summary judgment, plaintiff did not argue that the complaints about his disruptive conduct were untrue, nor did he suggest that FBP lacked an honest belief about what it learned from the investigation of Powell's conduct. *See Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021) (honest belief rule).

The Court must reject this meritless argument.  As an initial matter, the employer's evaluation of the joke did not hinge on whether it involved sodomy.  FBP viewed it as "an inappropriate rape joke involving two coworkers who were referenced as babies in a crib."  Doc. 56-3 at ¶ 4.  Powell admitted, both during the employer's investigation and in his deposition, that the joke involved rape.  *See* Doc. 52-3 at PAGEID 1840 (Powell's interview with FBP's investigator); Powell Dep. at 290 (saying that he used the word "rape" three times in his joke).

Even accepting Powell's wording of the joke, his conduct warranted termination under FBP's policies.  The Harassment and Employee Privacy Policy prohibited sexual jokes and offensive comments.  *See* Doc. 52-2 at PAGEID 1571.  The Anti-Harassment Policy forbade "jokes of a sexual nature" and "sexually degrading words."  *Id.* at PAGEID 1611.  The Anti-Violence Policy prohibited "behavior (including teasing and joking) that a reasonable person would find threatening, hostile, or offensive."  *Id.* at PAGEID 1590.

The Court readily finds that Powell's joke, in which he told a female coworker (in front of another coworker) that a "baby" version of her believed that she was being raped by a "baby" version of a male coworker, was exceptionally offensive and demeaning and violated FBP's policies.  The Court further finds that the joke, combined with the well-documented record of Powell's other harassing and offensive conduct, warranted his termination under FBP's Employee Discipline Policy.  *See id.* at PAGEID 1602.

### 4.      Summary

The Court thus finds that plaintiff has not shown that FBP's stated reasons for terminating his employment were pretextual.

### D.      FBP's Request for the Court to Confirm the Arbitration Award

FBP makes an unusual request in its motion for summary judgment.  It asks the Court to confirm the arbitration award, which found that FBP had just cause under the collective bargaining agreement to terminate Powell.

The Court declines to confirm the arbitration award.  In the case cited by FBP, a labor union brought an action in federal court under the Labor Management Relations Act, 29 U.S.C. § 185, to confirm an arbitration award.  *See IBEW Loc. No. 573 v. Steen Elec., Inc.*, 232 F. Supp.2d 797 (N.D. Ohio 2002).  Here, the union is not a party to the suit, plaintiff does not assert a cause of action under the LMRA, and the parties' pleadings do not put the arbitration award at issue.

Simply put, this lawsuit and the arbitration proceedings are separate matters, and the Court is in no position to pass judgment on the arbitration award.  *Cf. Nance v. Goodyear Tire & Rubber Co.*,

527 F.3d 539, 548 (6th Cir. 2008) ("While the expertise of arbitrators lies in the application of facts to the terms of an employee's contract or collective bargaining agreement, the expertise of federal courts lies in the application of facts to anti-discrimination statutes.").

## IV.      Conclusion

Accordingly, defendant's motion for summary judgment (doc. 52) is GRANTED, except as to FBP's request for confirmation of the arbitration award.  The Clerk of Court shall enter judgment in favor of the defendants.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: September 28, 2023